# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE-OPELOUSAS DIVISION

Norbert                                    Civil Action 05-1650

versus                                   Judge Tucker L. Melançon

Louisiana Medical Center                Magistrate Judge Methvin

## MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment filed by defendant, the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College ("LSU") against plaintiff, Sharon Norbert, [Rec. Doc. 86], plaintiff's memorandum in opposition [Rec. Doc. 101] and defendant's reply memorandum [Rec. Doc. 102]. For the reasons that follow, the motion will be granted.

### *I. Background*

Plaintiff Sharon Norbert is an African-American female. Norbert began her employment with University Medical Center ("UMC") in Lafayette, Louisiana as an Admit Technician in August, 1982. *R. 1, Complaint.* UMC is a hospital operating within the LSU system, an arm of the State of Louisiana. *R. 102.* Norbert was terminated on June 21, 2004. *Id.*

In 1998, Norbert injured her neck and back during the course and scope of her employment at UMC. *R. 101-2, Plaintiff's Statement of Uncontested Facts.* Norbert

was involved in an automobile accident in early March, 2004. *Id.* Following the automobile accident, plaintiff requested and was approved for leave under the Federal Medical Leave Act ("FMLA"). *R. 86-3, Defendant's Statement of Uncontested Facts.* Plaintiff submitted a medical certificate from her doctor, Michel E. Heard, M.D., which noted "no work status 3-8-04 through 4-5-04" and stated that her anticipated start date for FMLA was March 8, 2004 and her expected date of return to work was April 5, 2004. *Id.*

On March 8, 2004, Norbert telephoned Carla Mountney, Hospital Admissions Supervisor, and advised that she would not be coming in to work on March 8 or 9, 2004 due to problems she was having related to the accident. *Id.* On March 9, 2004, Norbert provided UMC with two excuses from Dr. Heard. *Id.* The excuse dated March 8 stated "Please excuse [plaintiff] on 3-8-04" and the second excuse dated March 9 stated "No work status x 2 weeks." *Id.* Norbert indicated to Mountney that her absence from work was "worker's compensation because the accident had undone the work on her back that the doctor had done." *Id.* UMC granted Norbert's request to use her compensatory and annual leave if she should run out of sick leave on March 17, 2004. *Id.*

For the last 12 years during the time she worked for UMC, plaintiff also worked as a part-time tax preparer for H&R Block. *Id.* On March 19, 2004, while Norbert was

on leave at UMC, Jennifer Simms, Human Resources Director, personally observed plaintiff working at H&R Block. *Id.* Three days later Norbert called in for leave on March 22 and 23 due to illness related to her workers' compensation injury. *Id.* UMC contacted H&R Block on March 22, at 5:38 p.m., and confirmed that Norbert was on duty. *Id.* On June 2, 2004, after issuing notice to Norbert that disciplinary action would be taken against her, and after reviewing Norbert's response to that notice, Simms recommended that Norbert be terminated. *Id.*

In a letter to Norbert dated June 14, 2004, Lawrence T. Dorsey, UMC Hospital Administrator, informed plaintiff that she was removed from her permanent position as a Hospital Admissions Technician with UMC effective at the close of business June 21, 2004. *R. 101-3.* Dorsey cited the foregoing undisputed evidence as well as a statement from Norbert to Dorsey dated January 20, 2004 which stated, "Mr. Dorsey, Would you please remind Ms. Karen Gardnier to inform Joann[1]/and or Carla about my 5 days no evening or nights. I told Joann I would bring a statement from Dr. Heard - but I remembered that you and I had had [sic] the conversation about my doctor's request. I take my medicine and my lumbar injection in the afternoon and rest my body at night. Thank You. Sharon Norbert." *Id.*

Dorsey summarized the evidence cited in the letter in his reasoning for

---

[1] Joann Duffy was one of plaintiff's supervisors at UMC. *R. 102.*

terminating Norbert, as follows

> You were on sick, annual (due to exhaustion of sick leave), and family medical leave and had a previous restriction that you could not work nights or evening on your job as Hospital Admit Technician. However, you were able to work at a second job that included evenings during this time period after an additional motor vehicle accident. As a result, during the time you falsely represented you were incapable of working for this facility, you were working your second, seasonal job. This is clearly inappropriate, unprofessional, and dishonest. *Id.*

Norbert filed this action *pro se* under Title VII, alleging racial discrimination and retaliation, on September 15, 2005. *R. 1*. Plaintiff then amended her complaint on June 2, 2006, June 23, 2006, September 12, 2006 and September 15, 2006. *R. 25, 31, 39, 42.* On September 19, 2007, the Court granted plaintiff's motion for a continuance of the November 19, 2007 trial date to allow her time to enroll counsel. *R.82.* On November 26, 2007, the Court granted Norbert's motion to enroll her present attorney. *R. 85.* Defendant filed this motion for summary judgment on December 11, 2007. *R. 86.* Thereafter, the Court granted plaintiff's motion to reset the hearing on the motion in order for her new counsel to prepare an objection to the motion. *R. 95.*

## II. Summary Judgment Standard

A motion for summary judgment shall be granted if the pleadings, depositions and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Little v.*

*Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994)(en banc). Initially, the party moving for summary judgment must demonstrate the absence of any genuine issues of material fact. When a party seeking summary judgment bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if such evidence were uncontroverted at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim. *Id.* If the moving party fails to carry this burden, his motion must be denied. If he succeeds, however, the burden shifts to the non-moving party to show that there is a genuine issue for trial.[2] *Id.* at 322-23.

Once the burden shifts to the respondent, he must direct the attention of the court to evidence in the record and set forth specific facts sufficient to establish that there is a genuine issue of material fact requiring a trial. *Celotex Corp.,* 477 U.S. at 324; Fed.R.Civ.Pro. 56(e). The responding party may not rest on mere allegations or denials of the adverse party's pleadings as a means of establishing a genuine issue

---

[2]Where the nonmoving party has the burden of proof at trial, the moving party does not have to produce evidence which would negate the existence of material facts. It meets its burden by simply pointing out the absence of evidence supporting the non-moving party's case. *Celotex Corp.,* 477 U.S. at 325. To oppose the summary judgment motion successfully, the non-moving party must then be able to establish elements essential to its case on which it will bear the burden of proof at trial. A complete failure of proof by the non-moving party of these essential elements renders all other facts immaterial. *Id.* at 322.

5

worthy of trial, but must demonstrate by affidavit or other admissible evidence that there are genuine issues of material fact or law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144. 159 (1970); *Little*, 37 F.3d at 1075. There must be sufficient evidence favoring the non-moving party to support a verdict for that party. *Anderson,* 477 U.S. at 249; *Wood v. Houston Belt & Terminal Ry.,* 958 F.2d 95, 97 (5th Cir. 1992). There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party. *Lavespere v. Niagara Mach. & Tool Works, Inc.,* 910 F.2d 167, 178 (5th Cir.1990).

If no issue of fact is presented and if the mover is entitled to judgment as a matter of law, the court is required to render the judgment prayed for. Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 322. Before it can find that there are no genuine issues of material fact, however, the court must be satisfied that no reasonable trier of fact could have found for the non-moving party. *Id.*

### III. Analysis

This matter is before the Court on a motion for summary judgment filed by defendant. Defendant moves for summary judgment on all of plaintiff's claims. Plaintiff asserts claims under Title VII alleging that LSU discriminated against her because of her race, and retaliated against her for filing previous charges of

discrimination against LSU. *R. 1, Complaint, ¶ 6; R. 25; R. 39; R. 42.* With regard to her Title VII claims, plaintiff alleges she is owed damages against LSU under 42 U.S.C. 1981a. *Id.* Plaintiff also asserts a state law claim of intentional infliction of emotional distress. *Id.*

*Title VII Racial Discrimination Claim*

Under Title VII, to survive summary judgment, the plaintiff has the burden to come forward with evidence that raises a genuine issue of material fact concerning each element of her prima facie case of unlawful discrimination. Using the well-established burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), plaintiff establishes a prima facie case of racial discrimination by proving (1) that she is a member of a protected class, (2) that she was qualified for the position, (3) that she suffered adverse employment action, and (4) that, in the case of disparate treatment, others similarly situated were treated more favorably. *Bryan v. McKinsey & Co.*, 375 F.3d 358, 360 (5th Cir.2004). The burden then shifts to the defendant to produce a legitimate, nondiscriminatory rationale for its decision. *McDonnell Douglas Corp.,* 411 U.S. at 802. If the defendant comes forward with a reason which, if believed, would support a finding that the challenged action was nondiscriminatory, the inference raised by the plaintiff's prima facie case drops from the case. *Id.*; *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993). The focus then shifts to the ultimate

question of whether the defendant intentionally discriminated against the plaintiff, and the burden shifts back to the plaintiff to "raise a genuine issue of material fact as to whether the [employer's] proffered reason was merely a pretext for discrimination." *McDonnell Douglas Corp.,* 411 U.S. at 802; *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 680 (5th Cir. 2001). "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148 (2000).

Defendant moves for summary judgment on plaintiff's claims on the grounds that plaintiff has not and cannot meet her burden of establishing a prima facie case of discriminatory discharge under Title VII. The Court takes judicial notice that, as an African American female, plaintiff is indisputably a member of a protected class and therefore meets the first prong. The Court also finds that plaintiff easily meets the third prong as she clearly suffered an adverse action in being terminated from employment.

As for the second prong, the record indicates that plaintiff worked for LSU for 22 years and that her employment evaluations in 2001, 2002, 2003 and 2004 were satisfactory overall. *R. 101-2, Aff. Of Plaintiff; R. 101-4, May 1, 2008 Depo. Of Lawrence Dorsey, p. 287.* In considering the facts in the light most favorable to the plaintiff as the non-moving party, the Court will assume that plaintiff was qualified for

the position and thus could meet the second prong of the discriminatory discharge test under Title VII.

Plaintiff's prima facie case fails, however, on the final prong. The record is void of any evidence that plaintiff suffered any discriminatory or differential treatment during her employment or with respect to her termination, or that others similarly situated were treated more favorably under circumstances "nearly identical" to hers. *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 406 (5th Cir.2005). LSU asserts that it terminated plaintiff because she worked at H&R Block at the same time she was on paid leave from her job with UMC for an injury she alleged under worker's compensation with LSU. Plaintiff does not dispute this assertion, but maintains that UMC varied from its usual non-discriminatory policy and procedures in deciding to terminate her when it had previously failed to terminate eight white employees at UMC. *R. 101-3, Plaintiff's Affidavit, No. 30 A.-H.*

Plaintiff's opposition memorandum does not address, nor does the record support plaintiff's contentions as to any of the white employees. The deposition testimony of Jennifer Simms discusses two of these employees, Michael Turnage and Wilson Boudreaux, both white males accused of payroll fraud. The record indicates that both men had been employed as civil service employees for at least 30 years, and they were therefore given the option to take immediate retirement rather than be terminated for

their offenses. *R. 101-6, Depo. Of Jennifer Simms, pp. 68 - 70*. As stated in her sworn affidavit, plaintiff had been a civil service employee with UMC for 22 years, and therefore, she did not have the option of retirement. *R. 101-3, Plaintiff's Affidavit, No. 4*. Plaintiff has failed to produce any competent evidence to raise a genuine issue of material fact that she received disparate treatment as compared to other employees of a different race in nearly identical circumstances. Thus, as she cannot establish the fourth prong, her prima facie case fails as a matter of law.

Assuming *arguendo* that plaintiff could establish a prima facie case, defendant asserts that there was a legitimate non-discriminatory reason for plaintiff's termination. The record does not suggest and plaintiff has not presented any evidence that would raise a genuine issue of material fact to whether defendant met his burden under *McDonnell Douglas Corp.* in establishing a non-discriminatory reason for the termination. Thus, in order to survive summary judgment, plaintiff must proffer sufficient evidence of pretext to create a question of fact for the jury that race was the real reason for her termination. *Patel v. Midland Memorial Hosp. and Medical Center*, 298 F.3d 333, 342 (5th Cir. 2002).

Plaintiff argues that her job with UMC as an admissions technician "required a lot of walking, lifting, standing, and pushing," while her part-time job at H&R Block allowed her to "sit[] down with her feet elevated." Plaintiff contends in her affidavit

that her supervisor, Peggy Kelly, told plaintiff that Kelly's children call Kelly "Hitler" and then Kelly called plaintiff the "N" word while going over her performance evaluation. *R. 101-3, Plaintiff's Affidavit, ¶¶ 20,21*. Plaintiff also states that she filed an EEOC complaint against another UMC employee who committed "racial acts" on the job. *Id. at ¶¶ 25-28*. She contends that UMC allowed the employee to resign after plaintiff's complaints of racial acts on the job were investigated. *Id.* Plaintiff states that the EEOC complaint resulted in a monetary out of court settlement *Id.*

    Plaintiff does not provide any evidence in addition to her affidavit that supports the above contentions. As to the difference she maintains in her job duties at UMC and H&R Block, plaintiff has offered no evidence of her duties at H&R Block, but has submitted a 2 page document entitled "Duties And Responsibilities" of a Hospital Admit Technician. *R. 101-6*. The document provides that an Admit Technician's responsibilities include 40% Screening Procedures, 40% Admission Procedures, 15 % Administrative Responsibilities and 5% Additional Responsibilities. *Id.* Plaintiff does not specifically address the document and the document itself does not indicate any specific physical requirements. Generally, however, it describes responsibilities such as filling out paper work and using the computer and telephone, which would be performed at a desk while sitting. *Id.* The deposition of Simms confirms that plaintiff's job duties at UMC required "quite a bit" of sitting and "some walking." *R. 101-6,*

11

*Depo. Of Simms, p. 84.*

Plaintiff's own self-serving affidavit with no evidentiary support falls far short of "sufficient evidence of pretext to create a question of fact for the jury that race was the real reason for her termination." *Guldin v. Concoco, Inc.*, 2002 WL 1220015, 3 (5th Cir.2002) *citing Lechuga v. Southern Pacific Transp. Co.*, 949 F.2d 790, 798 (5th Cir.1992) ("Conclusory statements in an affidavit do not provide facts that will counter summary judgment evidence, and testimony based on conjecture alone is insufficient to raise an issue to defeat summary judgment."). As there is nothing in the record suggesting any evidence of pretext to create a question of fact for the jury that race was the real reason for plaintiff's termination, the Court concludes that plaintiff was terminated for legitimate, non discriminatory reasons and plaintiff's claim of racial discrimination pursuant to Title VII must be dismissed.

*Title VII Retaliation Claim*

Plaintiff does not specifically address defendant's motion to dismiss her alleged retaliation claim. *R. 101.* Nor does plaintiff's complaint provide any specific allegations of retaliatory action by UMC. *R. 1, 25, 31, 39, 42.* Even assuming that plaintiff alleges she engaged in protected activity in which Title VII applies, plaintiff cannot establish a *prima facie* case. In order to establish a *prima facie* case of retaliation, a plaintiff must demonstrate: (1) that she engaged in activity protected by

12

Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse employment action. *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir.2004). "An employee has engaged in activity protected by Title VII if she has either (1) 'opposed any practice made an unlawful employment practice' by Title VII or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII." *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir.1996). There is nothing in the record linking any allegedly protected activity on plaintiff's part to her discharge from UMC. Hence, plaintiff has failed to establish a prima facie case for retaliation and this claim will be dismissed.

*State Law Claim of Intentional Infliction of Emotional Distress*

For the claim of intentional infliction of emotional distress the plaintiff must prove 1) that the conduct of the defendant was extreme and outrageous; 2) that the emotional distress of the plaintiff was severe; and 3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct. *White v. Montsanto Co.*, 585 So.2d 1205, 1209 (La.1991). The conduct must be "...so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Liability does not extend

to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. Persons must necessarily be expected to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind." *Id.* at 1209. Based on the record before the Court, plaintiff cannot establish that she was subjected to the type of deliberate and repeated harassment required to give rise to a claim for intentional infliction of emotional distress.

*Conclusion*

As plaintiff cannot establish any cause of action alleged against defendant, defendant's motion for summary judgment will be granted.[3]

---

[3] As plaintiff's Title VII claims will be dismissed, the Court need not address plaintiff's claims for damages and recovery from defendant pursuant to 42 U.S.C. 1981a.